UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL SALIBY | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 303CV01535 (DJS) |
| | : | |
| PETER KENDZIERSKI, | : | |
| PAUL M. THOMAS, and BECKMAN | : | |
| COULTER INC. | : | |
|     Defendants, | : | OCTOBER 6, 2004 |

## DEFENDANT'S LOCAL RULE 56(a) 1 STATEMENT

1. On March 5, 2002, the plaintiff Michael Saliby was terminated from his employment with the co-defendant Beckman Coulter, Inc. during a meeting he had with two employees of Beckman Coulter, Inc., the co-defendant Paul M. Thomas and Patrick Kelly. (Exhibit 2, pp. 162-169).

2. The meeting between the plaintiff, the co-defendant Paul M. Thomas, and Patrick Kelly was held in Branford, Connecticut. (Exhibit 2, pp. 154,162).

3. Prior to March 5, 2002 the plaintiff's immediate supervisor at Beckman Coulter, Inc., was Rich Raudnael. Mr. Raudnael's supervisor was Victor Hasbrouck and Victor Hasbrouck's supervisor was Patrick Kelly. (Exhibit 2, p. 154).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

4. In an inter-office memorandum that was addressed to Michael Saliby and that was dated October 19, 2000 Patrick Kelly and Rich Raudnael referenced "inappropriate and potentially threatening communications" on the part of the plaintiff "in recent months" with other employees of Beckman Coulter, Inc. This memorandum also referenced an allegation that on June 14, 2000 the plaintiff threatened to kill another employee of Beckman Coulter, Inc. by the name of Larry Braun. This memorandum also contained a warning that any future communications of a threatening and/or abrasive nature would be cause for further disciplinary action against the plaintiff which might include termination. (Exhibit 4).

5. Everything that was in the memorandum dated October 19, 2000 was in fact discussed with Michael Saliby by Patrick Kelly and Rich Raudnael. (Exhibit 2, pp. 120-121, 127-128).

6. The plaintiff told Patrick Kelly in October of 2000 that he had no recollection of making the threatening remarks about Larry Braun that were referenced in the October 19, 2000 inter-office memorandum because he was intoxicated at the dinner where they were alleged to have been made.  (Exhibit 2, pp. 121-122, 127).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

7. In the plaintiff's performance review report for the year 2000 that was signed by Rich Raudnael and Michael Saliby on February 19, 2001, the plaintiff was advised that "display of anger towards internal people will not be tolerated and could lead to dismissal from the company." (Exhibit 4, Exhibit 2, pp. 131-133).

8. In the plaintiff's performance review report for the year 2001 that was signed by Rich Raudnael, Victor Hasbrouck, and Michael Saliby on February 28, 2002 the plaintiff was advised that he had failed to correct his verbal communications and to act appropriately and his alleged fits of anger and use of vulgar language were documented. (Exhibit 2, pp. 143-149, Exhibit 6).

9. Approximately four days prior to March 5, 2002 Michael Saliby had a meeting with Rich Raudnael and Victor Hasbrouck regarding his performance review for the year 2001. During this meeting the plaintiff was annoyed because he believed he was unjustifiably being blamed for certain things. During this meeting the plaintiff told Victor Hasbrouck that he was a spineless worm and that he did not want to work for him anymore. The plaintiff walked out of the meeting. (Exhibit 2, pp. 156-157, 160-162, Exhibit 6).

10. During his meeting with Rich Raudnael and Victor Hasbrouck the plaintiff told Victor Hasbrouck that he was depressed and that "I live for my job." (Exhibit 2, p. 223).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

11.  Prior to being terminated at the meeting the plaintiff had with Paul M. Thomas and Patrick Kelly on March 5, 2002, the plaintiff thought he was going to get fired, knew it was going to be upsetting, and he took a painkiller to help with problems with his back. (Exhibit 2, pp. 156-157, 165).

12.  At the termination meeting on March 5, 2002 the plaintiff told Patrick Kelly and Paul Thomas that he knew he was going to be fired and that he had sedated himself with medication before coming to the meeting. (Exhibit 2, p. 165).

13.  At the termination meeting on March 5, 2002 the plaintiff was extremely upset, despondent, and had tears in his eyes. (Exhibit 2, pp. 166-167).

14.  At the meeting on March 5, 2002 Patrick Kelly gave the plaintiff a letter from Patrick Kelly dated March 5, 2002 documenting his termination. In this letter the plaintiff was advised in part not to enter Beckman Coulter property at any time, at any location, for any reason, not to participate in or show up to any Beckman Coulter sponsored activities, and not to call or otherwise contact anyone at Beckman Coulter except for Human Resources or to clarify benefit questions. The plaintiff was also advised that Beckman Coulter would take appropriate action if necessary, such as seeking a restraining order against the plaintiff, if he did not comply with the prohibitions mentioned above. (Exhibit 2, pp. 167-168, Exhibit 7).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

15. After the termination meeting was concluded on March 5, 2002 Paul Thomas drove the plaintiff home to the plaintiff's residence which at that time was located at 2 Bridge Street in Branford, Connecticut. Upon arriving at the plaintiff's residence Mr. Thomas helped the plaintiff bring certain things into his residence. (Exhibit 2, p. 170).

16. While Mr. Thomas was at the plaintiff's residence on March 5, 2002 he came into the kitchen where the plaintiff had a gun safe that weighed approximately 650 pounds, was five feet high, and contained guns. The plaintiff does not know whether Mr. Thomas saw the gun safe while he was there. (Exhibit 2, pp. 172-173).

17. It was common knowledge at Beckman Coulter that the plaintiff had guns at his residence and that he had a license to carry a gun. (Exhibit 2, pp. 171-172).

18. On March 5, 2002 Paul Thomas reported to Officer Kendziersli that Michael Saliby had been terminated after making threatening and unusual remarks in the workplace at Beckman Coulter, Inc. Mr. Thomas also reported that the plaintiff had told other employees that he was depressed and taking medication and that it was a good thing he took medication or he would kill people and that the medication kept him from using his guns on people. (Exhibit 1, Exhibit 3).

19.  The plaintiff admits that he may have told his boss at Beckman Coulter that he was being treated for depression and was taking antidepressants for it. The plaintiff has suffered from and received medical treatment for depression since the early 1990's. He suffered a panic or anxiety attack in approximately 1992 while employed by Beckman Coulter, Inc. He received short term disability and was out of work from January 20, 1992 to April 16, 1992. (Exhibit 2, pp. 68-74, 221-222).

20.  Mr. Thomas told Officer Kendzierski that one week prior to March 5, 2002 Michael Saliby had his job performance evaluation and that during that evaluation Mr. Saliby made comments to a regional supervisor named Victor Hasbrouck that he was depressed and that his job was the only thing he had to live for and if he was fired he would have nothing to live for. Mr. Thomas also reported that the plaintiff became very angry during this meeting, yelling and swearing at Mr. Hasbrouck because he received a poor review. (Exhibits 1 and 3).

21.  Mr. Thomas also told Officer Kendzierski on March 5, 2002 that due to Mr. Saliby's past comments he came from Beckman Coulter, Inc.'s Chicago office to be at the meeting on March 5, 2002 during which the plaintiff was to be fired and that Beckman Coulter, Inc. was a large corporation that was nationwide and had a zero tolerance for workplace violence. (Exhibits 1 and 3).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

22. Mr. Thomas also reported to Officer Kendzierski on March 5, 2002 that during the termination meeting the plaintiff made no threats and did not become violent, however, Mr. Thomas was concerned because the plaintiff was clearly depressed and appeared to have been drinking. (Exhibits 1 and 3).

23. On March 5, 2002 Mr. Thomas told Officer Kendzierski that due to the plaintiff's past history of comments about needing medication to stop his violent tendencies and his depression he (Mr. Thomas) wanted to notify police to make them aware of the situation should Mr. Saliby return to the Beckman Coulter warehouse in Branford. (Exhibits 1 and 3).

24. Beckman Coulter, Inc. did have an office in Branford, Connecticut. (Exhibit 1, Exhibit 2, p. 155, and Exhibit 3).

25. On March 5, 2002 Mr. Thomas reported to Officer Kendzierski that he had gone to Michael Saliby's residence and saw a huge gun locker and that Mr. Saliby had numerous guns. (Exhibits 1 and 3).

26. The only source of information Michael Saliby has as to what Mr. Thomas told Officer Kendzierski is the police report for the subject incident. (Exhibit 2, pp. 221, 225-226).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

27. On March 5, 2002 the defendant Peter Kendzierski was a member of the Branford Police Department and he was the investigating officer for the incident that is the subject of Count One of the Plaintiff's Complaint. (Exhibits 1 and 3).

28. On March 5, 2002 after speaking with Paul Thomas Officer Kendzierski responded to Michael Saliby's residence located at 2 Bridge Street in Branford, Connecticut. The plaintiff lived alone at his residence on March 5, 2002. (Exhibit 1, Exhibit 2, pp. 174-175, and Exhibit 3).

29. Upon arriving at Mr. Saliby's residence on March 5, 2002 Officer Kendzierski knocked on the plaintiff's door and the plaintiff opened the door. Officer Kendzierski identified himself and explained that someone from Beckman Coulter had called the Branford Police Department expressing concern as to Mr. Saliby's mental status. (Exhibit 1, Exhibit 2, pp. 177-178, Exhibit 3).

30. The plaintiff invited Officer Kendzierski into his residence on March 5, 2002. (Exhibit 2, p. 179, Exhibit 3).

31. While talking with Officer Kendzierski Mr. Saliby admitted that he had suffered from depression for over ten years, that he was currently very depressed over losing his job, and that he needed to talk to someone because he was depressed. (Exhibit 1, Exhibit 2, p. 189, Exhibit 3).

32. While talking with Officer Kendzierski Mr. Saliby said something to the effect of he would "like to ring the neck of that little fucker" in referring to one of the managers employed by Beckman Coulter, Inc. in Chicago, and that it was a good thing he took medication to keep him from doing so. (Exhibit 1, Exhibit 2, pp. 182-183, 187-188, Exhibit 3).

33. While speaking with Officer Kendzierski Mr. Saliby also said he had to leave his apartment because that was where his medication was and he did not want to be near it because he was afraid of what might happen. (Exhibit 1, Exhibit 3).

34. While speaking with Officer Kendzierski Mr. Saliby admitted to drinking. (Exhibit 1, Exhibit 3).

35. While he was at the plaintiff's residence on March 5, 2002 Officer Kendzierski saw the plaintiff's gun collection in the gun safe. The guns in the safe included a Mossberg 500 12 guage shotgun with a Simmons Scope, a Mossberg 1442sb 22 caliber rifle, a Savage 308 caliber rifle with a Leopold Scope, two Ruger 22 caliber pistols, and assorted ammunition. (Exhibit 1, Exhibit 2, pp. 95-96, Exhibit 3).

36. During his discussions with the plaintiff Officer Kendzierski noticed that the plaintiff had several mood swings. (Exhibits 1 and 3).

37. Based on his observations of and discussions with the plaintiff, the information provided by Mr. Thomas, and the existence of the weapons in the plaintiff's apartment, Officer Kendzierski exercised his discretion and concluded that he had reasonable cause to believe that Mr. Saliby had a psychiatric problem and was either a danger to himself or to others and was in need of immediate medical care and treatment so he took him into custody and had him transported by ambulance to Yale New Haven Hospital for an evaluation. (Exhibits 1 and 3).

38. Officer Kendzierski completed a written police emergency examination request form on March 5, 2002 at approximately 4:30 p.m., the original of which was provided to Yale New Haven Hospital. (Exhibits 1 and 3).

39. Prior to being transported via ambulance to the hospital the plaintiff walked into the ambulance, he was not handcuffed, and he understood that he would have a competency oriented or a psychologically oriented evaluation at the hospital. The police did not accompany the ambulance to the hospital. (Exhibit 1, Exhibit 2, pp. 191-194, Exhibit 3).

40. Prior to the plaintiff's transport via ambulance to the hospital the defendant Officer Peter Kendzierski did not raise his voice nor did he physically harm or threaten to harm the plaintiff. (Exhibit 1, Exhibit 2, p. 192, Exhibit 3).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

41.  The plaintiff was not arrested or charged with any type of crime. The plaintiff was not held at Yale New Haven Hospital by Officer Kendzierski or any member of the Branford Police Department. (Exhibit 1, Exhibit 2, p. 191, Exhibit 3).

42.  The Yale New Haven Hospital Connecticut Mental Health Center psychiatric evaluation report dated March 5, 2002 indicates in part that the plaintiff stated he possibly could hurt himself if left alone and that the plaintiff felt he had been treated unfairly at work. The diagnosis included depression. (Exhibit 8).

43.  The Yale New Haven Hospital Connecticut Mental Health Center reports indicate that the plaintiff threatened the medical staff, demanded narcotics, and was threatening to hurt himself or others. Dr. S. Kodama ordered the use of four-point restraints on the plaintiff at approximately 7:45 p.m. on March 5, 2002. (Exhibit 8, Exhibit 9, Exhibit 10).

44.  While at Yale New Haven Hospital the plaintiff told the medical staff that he had chronic depression and that he was being railroaded out of his job. He called one of his doctors an incompetent little shit or bastard when he was told he would be kept overnight in the hospital. At one point the plaintiff was screaming at one of the hospital personnel about a foot and a half from the person's face because he was angry and wanted to leave the hospital. (Exhibit 2, pp. 205-206, 209, 211-213, Exhibit 8, Exhibit 9, and Exhibit 10).

45.  The plaintiff was held overnight for observation at Yale New Haven Hospital and released the next day. (Exhibit 2, p. 213, Exhibit 11).

46.  After Michael Saliby was transported to Yale New Haven Hospital by ambulance Judge Thomas O'Keefe found that there was probable cause to believe that Mr. Saliby posed a risk of imminent personal injury to himself or to other individuals in issuing a search and seizure warrant on March 5, 2002 for the plaintiff's firearms. (Exhibit 1, Exhibit 3).

47.  Connecticut General Statutes §17a-503 allows police officers, who have reasonable cause to believe a person has psychiatric disabilities and is dangerous to himself or others and in need of immediate care and treatment, to take that person into custody and cause such person to be taken to a general hospital for an emergency examination. Connecticut General Statutes §17a-503(a). (Exhibit 12).

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580

        Defendant, Peter Kendzierski


BY:_____
Andrew M. Dewey
Baio & Associates, P.C.
15 Elm Street
Rocky Hill, CT 06067
Telephone: 860-571-8880
Facsimile: 860-571-8853
Federal Bar No. ct07152
E-Mail: <u>adewey@baiolaw.com</u>
His Attorney

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 6th day of October, 2004 to all counsel of record as follows:

John R. Williams, Esq.
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Edward M. Richters, Esq.
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105

        _____
        Andrew M. Dewey

**LAW OFFICES OF BAIO & ASSOCIATES, P.C.**
15 Elm Street, Rocky Hill, CT 06067 ~ Telephone (860) 571-8880 ~ Facsimile (860) 571-8853 ~ Juris# 416580