UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL SALIBY<br>Plaintiff, | :<br>:<br>: |
| v. | : Civil No. 3:03CV01535(DJS)<br>:<br>: |
| PETER KENDZIERSKI<br>and BECKMAN COULTER, INC.<br>Defendants | :<br>:<br>:<br>: October 8, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT BECKMAN COULTER, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, Beckman Coulter, Inc. hereby submits this memorandum of law in support of its Motion for Summary Judgment as to Counts Two, Three and Four in the above matter.

**I.   Introduction**

This action arises out of the Plaintiff's involuntary overnight admission to the Yale-New Haven Hospital psychiatric unit for observation, after having been transported to Yale-New Haven at the direction of the Branford Police Department, following the termination of his employment by Beckman Coulter on March 5, 2003.

In addition to claims against the Branford Police Officer who ordered the Plaintiff's transportation to the hospital, the Plaintiff has asserted claims of defamation (Count Two), intentional infliction of emotional distress (Count Three), and negligent infliction of emotional

distress (Count Four) against Beckman Coulter. In essence, the Plaintiff contends that Beckman Coulter "falsely and maliciously" stated to the Branford Police that the Plaintiff had made threatening remarks in the workplace and that, based upon those statements, he "was seized, falsely imprisoned, and forced to undergo a psychiatric evaluation."

Central to this motion is the critical need for employers to remain vigilant and unafraid to take cautious steps – and to be permitted to take reasonable measures - to avoid potential workplace violence. The consequences of succumbing to liability avoidance at the expense of employee safety can be deadly.

> In an average week in U.S. workplaces, one employee is killed and at least 25 are seriously injured in violent assaults by current or former co-workers.
>
> Many of those attacks might have been prevented.
>
> In nearly eight of 10 cases, killers left behind clear warning signs – sometimes showing guns to co-workers, threatening their bosses or talking about attacking. But in the majority of cases, employers ignored, downplayed or misjudged the threat, according to a USA Today analysis of 224 instances of fatal workplace violence.
>
> Less than 20% of the companies targeted in such attacks beefed up security or took other internal prevention steps. It is not known how many called police before the attacks took place.

USA TODAY, Cover Story, Page 1, "Stopping a Killer," July 16-18, 2004.[1]

As will be discussed more fully below, the undisputed facts in this action establish that, following an employment termination meeting with the Plaintiff, a Beckman Coulter security manager[2] simply made a good faith informational report to the police, based upon the

---

[1] A copy of the USA Today article is attached as Exhibit 10.

[2] The individual claims against the security manager, Paul Thomas, have previously been dismissed pursuant to a stipulation by the parties

Plaintiff's emotional state and undisputed history of threatening behavior. It is also an undisputed fact that Beckman Coulter did not allege that any illegal conduct had occurred at the termination meeting and did not make a criminal complaint against the Plaintiff. Finally, the undisputed evidence demonstrates that a Beckman Coulter representative was not present during the police officer's visit to the Plaintiff's home, and the police officer's decision to have the Plaintiff transported to Yale-New Haven for evaluation was based solely upon the officer's own observations of the Plaintiff and the Plaintiff's own inappropriate statements to the officer.

The incontrovertible evidence establishes that there was no unreasonable, extreme or outrageous conduct on the part of Beckman Coulter, and that the company did nothing more than exercise it's qualified privilege to make a good faith police report. Accordingly, Beckman Coulter is unquestionably entitled to the entry of summary judgment as to Counts Two, Three and Four of the Complaint.

## II.     Standard for Summary Judgment

A Federal Court may grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Once the movant has made the showing that there exists no genuine issue of material fact, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is indeed a trial worthy issue. Celotex Corp. v. Catrett, 477 US. 317, 324, 106 S.Ct. 2548, 2553 (1986).

To satisfy the criterion of trial worthiness an issue must be "genuine"; that is, the relevant evidence, viewed in the light most favorable to the party opposing the motion, must be sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side. Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Trial worthiness necessitates "more than simply showing that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986).

Trial worthiness also requires an issue that involves a "material" fact. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510. In this context, the term "material" means that a fact has the capacity to sway the outcome of the litigation under the applicable law. Id. If the facts on which the non-movant relies are not material, or if its evidence "is not significantly probative," summary judgment is appropriate. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party... [i]f the evidence is merely colorable... or is not significantly probative... summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50.

### III. Count Two - Defamation

In Count Two, the Plaintiff alleges defamation by Beckman Coulter, based solely upon the informational report by Beckman's security manager, Paul Thomas, to Branford Police Officer Peter Kendzierski. That claim must fail as a matter of law because Beckman Coulter had a qualified privilege to make the police report in question.

4

An individual's qualified privilege to make a good faith report to police has long been recognized under Connecticut law:

> We note, of course, that . . . all citizens have a conditional privilege to communicate to police officials respecting the perpetration of an alleged criminal act. State v. Pape, 90 Conn. 98, 96 A. 313; Flanagan v. McLane, 87 Conn. 220, 87 A. 727; Anderson v. Cowles, 72 Conn. 335, 44 A. 477; Dennehy v. O'Connell, 66 Conn. 175, 33 A. 920; 50 Am.Jur.2d, libel and Slander, 214.

Moriarty v. Loppe, 162 Conn. 371, 387, fn.2. (1972).

In recognizing an individual's right to make a police report without having to worry about the potential of a defamation suit, Connecticut follows the majority of other states.

> As stated in Fridovich v. Fridovich, 598 So.2d 65, 67 (Fla.1992), although "an unsworn statement to a municipal police officer in regard to an alleged crime is not accorded an absolute privilege which will bar, as a matter of law, a subsequent action for slander based on such a statement" (quoting from an earlier case), the court went on to note that "Turning to other jurisdictions, it appears that a majority of states that situation), see general rule to this effect as stated in 50 Am.Jur.2d, "Libel and Slander," § 293 pp. 583, et seq. In Fridovich Florida adopted this qualified privilege and one of the cases it cited for the majority view is Flanagan v. McLane, 87 Conn. 220, 224 (1913); also see Moriarity v. Lippe ,CT Page 6063 162 Conn. 371, 387, fn.2. ***Connecticut thus adopts the qualified privilege for such communications or reports to the police,*** cf. analogous privilege when negligence action is brought against citizen informer whose reporting to police of a crime led to an arrest and charges which were later thrown out, LaFontaine v.Family Drug Stores, 33 Conn. Sup. 66, 76 (1976), relying in part on Goodrich v. Warner, 21 Conn. 432, 436 (1852).

Mendez v. Vonroll Isola U.S.A., 2004 Ct. Sup. 6054, 6063 (Conn. Super. Ct. 2004) (Emphasis supplied.)[3]

---

[3] A copy is attached as Exhibit 11.

5

Mr. Thomas' report to Officer Kendzierski is deemed to be "presumptively privileged." Mendez v. Vonroll Isola U.S.A., 2004 Ct. Sup. at 6064. Therefore, the burden shifts to the Plaintiff to overcome that privilege with credible evidence of "actual malice" on the part of Mr. Thomas. Id.

> (To overcome) "a qualified privilege a plaintiff would have to establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law malice." Id. at 598 So.2d page 69. The above referenced Am. Jur. article says at § 293 page 583 ". . . the general rule has been said to be that defamatory statements voluntarily made by private individuals to the police . . . prior to the institution of criminal charges are *presumptively qualifiedly privileged* (emphasis added).
>
> Our state follows this law when dealing with allegations of defamation based on libel or slander and our court holds generally that **conditional privileges are defeated when "abused" because a statement was made with "actual malice — that is with knowledge of its falsity or reckless disregard as to its truth,"** Torosyan v. Boehringer Ingelheim Pharmaceutics, Inc., 234 Conn. 1, 29 (1995) (relying on § 600 of Restatement (Second) Torts (Vol. 3). The burden would be on the plaintiff, of course, to show the abuse of any conditional privilege, cf. Bleich v. Ortiz, 196 Conn. 498, 504-05 (1985), Corsello v. Emerson Brothers, Inc., 106 Conn. 127 (1927), which says at page 132 ". . . an occasion of privilege having been shown, the liability of the defendant turns upon whether the plaintiff has established that the defamatory article was published by the defendant with malice in fact." Flanagan v. McLane, supra puts the same burden on a plaintiff in a libel case where a conditional privilege to report to the police is found, 87 Conn. at page 222. In other words the plaintiff must present evidence that the privilege was abused.

Mendez v. Vonroll Isola U.S.A., 2004 Ct. Sup. at 6063 (emphasis supplied).

6

The evidentiary record in this case is entirely devoid of any conceivable evidentiary basis for suggesting that Mr. Thomas' statements to Officer Kendzierski were made "with knowledge of its falsity or reckless disregard as to its truth." All of the undisputed evidence is to the contrary. It is incontrovertible that every statement that Mr. Thomas made to the police was based upon historical facts made known to him and upon his personal observation of the Plaintiff at the termination meeting and at the Plaintiff's residence, where he personally viewed the Plaintiff's gun safe.

The Plaintiff has admitted - almost proudly - that he routinely engaged in intimidating, insubordinate and hostile conduct – frequently cursing and yelling at co-employees and management alike, and insulting his managers without hesitation.

The Plaintiff has also admitted that he had previously suffered what he himself referred to as a mental breakdown, having collapsed in the presence of co-workers, and that he remained out on leave for several months as a result of the breakdown.

It is uncontested that, in a drunken stupor at group dinner, the Plaintiff made threatening remarks about a human resources manager to the effect that "I'm going to find out where Larry Braun lives and go and kill him and his family." In fact, the reason that the Plaintiff cannot dispute his threat is because he admittedly had become grossly intoxicated on expensive drinks to spite the company.

The Plaintiff has admitted without reservation that he had publicly voiced his extreme anger at his management, his distrust of the company and his feelings of having been severely mistreated.

7

The Plaintiff has admitted that, at the termination meeting, he told Mr. Thomas and his manager, Patrick Kelly, that he had medicated himself to prepare himself for the meeting.

The Plaintiff has admitted that he became emotional at the termination meeting on March 5, 2003, and that he then became agitated and accusatory.

The Plaintiff has admitted that it was common knowledge around the workplace that he kept a gun collection at his home. It is undisputed that Mr. Thomas was aware of the collection and actually saw the Plaintiff's gun safe when he drove the Plaintiff home after the termination meeting.

It is undisputed that all of Mr. Thomas' statements to Officer Kendzierski related to these facts.

It is also undisputed that Mr. Thomas made certain that the police officer understood that the report was informational only, and that he was not accusing the Plaintiff of any crime for which he should be arrested. He specifically pointed out to Officer Kendzierski that no threatening conduct had occurred at the March 5 meeting, and neither Mr. Thomas nor anyone else at Beckman Coulter made a criminal complaint against the Plaintiff that day.

As a general matter, given the truth of the statements made to the police by Mr. Thomas, the Plaintiff would not be able to establish a case of defamation in any event. To sustain his claim for slander, the Plaintiff must establish that Mr. Thomas published *false* statements that harmed him and that he was not privileged to do so. Torosyan v. Boehringer Ingelheim Pharmaceuticals Inc., 234 Conn. 1, 27, 662 A.2d 89 (1995) (emphasis added).

The truth of an alleged statement that forms the basis of a slander claim is an absolute defense. See Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 112, 448 A.2d 1317 (1982); see also Restatement (Second) of Torts, § 581A. It cannot be overemphasized that only substantial truth need be shown to constitute the justification. Id.

Under the circumstances, there is no evidentiary foundation for an assertion of malice, or a claim that the qualified privilege to make a police report was abused in any manner, and the Plaintiff cannot establish the publication of any false statements. Accordingly, Beckman Coulter is entitled to the entry of summary judgment as to the defamation claim in Count Two.

## IV.     Count Three – Intentional Infliction of Emotional Distress

In order for the Plaintiff to prevail on his claim of intentional infliction of emotional distress, he must establish four elements. "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." See Petyan v. Ellis, 200 Conn. 243, 254 (Conn. 1986); Silberberg v. Valley Street Crime Unit, 186 F.Supp.2d 157 (D. Conn. 2002) (AWT); Hood v. Aerotek Inc., 2002 U.S. Dist. LEXIS 3515 (D. Conn. 2002)[4]. All four elements must be established. Petyan v. Ellis, supra, 254. Reed v. Signode Corp., 652 F. Sup. 129, 137 (D. Conn. 1986).

---

[4] A copy is attached as Exhibit 12.

9

As an initial matter, there is no evidence, whatsoever, that might support a claim that Mr. Thomas ever intended to inflict emotional distress on the Plaintiff, or should have known that severe emotional distress would likely result from his report. It is undisputed that he had not met the Plaintiff before the March 5 termination meeting and, therefore, had no reason to want to harm him. Moreover, Mr. Thomas had absolutely no way of predicting that Officer Kendzierski would take it upon himself to visit the Plaintiff and, upon speaking with and observing the Plaintiff, would order him transported to a hospital for psychiatric observation.

Nor can Mr. Thomas' informational report to the police be reasonably viewed as even approaching the extreme and outrageous threshold.

> Connecticut courts have relied on the Restatement (Second) of Torts in interpreting what constitutes "extreme and outrageous" conduct. See Petyan, 510 A.2d at 1342. "The 'extreme and outrageous' standard is a high one: 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, **as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.**'" Reed v. Town of Branford, 949 F. Supp. 87, 91 (D. Conn. 1996) (quoting Restatement (Second) of Torts §46, comment d (1965)). Reed, 949 F. Supp. at 91.

Hood v. Aerotek Inc., *18 (emphasis supplied.).

Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" DeLeon v. Little, 981 F.Supp.2d 728, citing; Mellaly, 42 Conn.Supp. at 19-20.

10

The question as to whether Mr. Thomas' conduct rises to the level of extreme and outrageous conduct is to be determined by the Court in the first instance. Reed v. Town of Branford, 949 F. Supp. 87, 91 (D. Conn. 1996); Hood v. Aerotek Inc., supra, *19. See also, Carnemolla v. Walsh, 75 Conn. App. 319, 331–32, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003); Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552 (D. Conn. 1996); see also Bell v. Board of Education, 55 Conn. App. 400, 410 (1999). Only where reasonable minds disagree does it become an issue for the jury. Bell, at 55 Conn. App. 410. (1999); U.S.A. Menon v. Frinton, 170 F.Supp.2d 190, 198 (D. Conn. 2001).

Reporting suspected criminal conduct to the police does not rise to the level of extreme and outrageous conduct. See Canty v. Rubenstein & Sendy, 2001 Ct. Sup. 8771 (Conn. Super. Ct. 2001) (dismissing claim of emotional distress based on false accusation of criminal conduct reported to police).[5]  In Canty, the Court addressed whether false accusations of criminal conduct rose to the level of extreme and outrageous behavior. The plaintiff's employer reported to the police suspected "criminal and unethical acts," by the plaintiff including "demanding that another employee go outside and fight, displaying in the office a paper depicting a large hunting knife, and gaining access to private computer information." Canty, at 8772. The Court noted that Connecticut's appellate courts have not yet addressed the question of whether false accusations of criminal behavior constitute extreme and outrageous employer conduct, however, other jurisdictions have found that such conduct does not constitute extreme and outrageous behavior. Canty, at 8773; See also Daemi v. Church's Fried Chicken, 931 F.2d 1379, 1388 (10th Cir 1991); Sugarman v. RCA Corp., 639 F. Supp. 780, 787-88 (M.D. Pa. 1985). The Court

---

[5] A copy attached at Exhibit 13

11

stated that "an important factor is whether the allegedly criminal behavior was work-related." Canty., at 8773 "An employer should have some latitude in investigating possible employee misconduct." Id. See also Daemi, 931 F.2d 1388. Because the plaintiff's claim was based entirely on "allegations of work-related misconduct," the Court held that reporting such conduct to the police, even falsely, did not constitute extreme and outrageous behavior, and dismissed Plaintiff's claim of intentional infliction of emotional distress. Canty, at 8774.

Even in cases where an individual maliciously asserts legal claims against another, or threatens to file a lawsuit containing scurrilous allegations, Connecticut courts have refused to find extreme and outrageous conduct. In Heim v. California Federal Bank, 78 Conn. App. 351 (2003), the Connecticut Appellate Court ruled unequivocally that "the act of filing a lawsuit, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior or make the average member of the community raise their hand and exclaim, 'Outrageous!'" Similarly, in Biro v. v. Hirsh, 62 Conn. App. 11 (2001), the Appellate Court was confronted with a third party complaint that the third party defendant had encouraged the plaintiff to commence a legal action against the defendant, with scandalous sex oriented allegations, and had assisted the plaintiff in obtaining counsel to do so. Once again, the court found a lack of extreme an outrageous conduct.

> The claims against Ford in the third party complaint were based in part on allegations that (1) Ford had entered into a conspiracy to commit extortion with the plaintiff and Eva Kale, another housekeeper employed by the defendants, (2) the purpose and object of the conspiracy were to compel the defendants, through threats of uttering and publishing false, malicious and scandalous statements about them, to pay to the plaintiff and to Kale large sums of money in return for refraining from such malicious and unlawful conduct, (3) in furtherance of the conspiracy, Ford had advised the plaintiff to commence legal action against the

12

> defendants and had assisted the plaintiff in retaining an attorney, and (4) the defendants suffered damages and injuries as a result of the conspiracy.
>
> * * *
>
> Here, the defendants do not allege facts establishing that Ford's conduct was extreme and outrageous. Count two merely alleges that Ford advised the plaintiff to commence legal action against the defendants and assisted the plaintiff in retaining an attorney. Such conduct cannot be said to transgress the bounds of socially tolerable behavior. See Ancona v. Manafort Bros., Inc., supra, 56 Conn. App. 712. We conclude that, absent the extortion claim, count two is legally insufficient to allege a cause of action against Ford for intentional infliction of emotional distress.

Biro v. v. Hirsh, 62 Conn. App. at 15, 21

## V.     Count Four – Negligent Infliction of Emotional Distress

### a.     Absence of Requisite Behavior

The negligent infliction of emotional distress claim in Count Four also fails as a matter of law, since the undisputed conduct of Paul Thomas cannot reasonably be viewed as extreme, outrageous and socially intolerable. To establish a claim of negligent infliction of emotional distress, the Plaintiff has the burden of proving that the "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that, distress, if it were caused, might result in illness or bodily harm." Parsons v. United Technologies Corp., 243 Conn. at 1010, citing Montinieri v. Southern New England Telephone, 175 Conn. 337, 345 (1978); See also Morris v. Hartford Courant Co., 200 Conn. 676, 683-84 (1986).

The Connecticut Appellate Court has ruled that, as with the tort of intentional infliction of emotional distress, a claim of negligent emotional distress requires the existence of extreme and outrageous conduct.

> The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous.

Muniz v. Kravis, 59 Conn. App. 704, 709-10 (2000).[6]

To meet the standard of extreme and outrageous conduct, a Plaintiff must establish "conduct exceeding all bounds usually tolerated by decent society." Petyan v. Ellis, 200 Conn. 243, 254 (Conn. 1986).

As has already been discussed above, Mr. Thomas simply made an informational, cautionary report to the local police – with no criminal complaint. His conduct was nothing short of prudent under the circumstances. Common sense dictates that an emotional individual with a past history of intimidating and threatening behavior, a history of psychiatric problems, a clearly and repeatedly stated abhorrence of his employer, who keeps a gun collection in his home, and who just had his employment involuntarily terminated during a meeting marked by emotion and agitation, might certainly pose a potential risk to his employer and co-workers in the near term. Indeed, the failure of an individual to at least notify authorities of a potential problem could be deemed an act of negligence under the circumstances.

The need for unhindered access to the police is especially necessary in this day of ever increasing workplace violence.

---

[6] But see Benton v. Simpson, 78 Conn. App. 746 (2003)

14

Connecticut courts have rejected negligent infliction claims based on a variety of other employment related actions involving security measures. In Parsons, for example, the Connecticut Supreme Court rejected as patently insufficient a negligent infliction emotional distress claim arising from the plaintiff being terminated with only two hours notice and being escorted from the workplace by a security guard, noting that "[i]t is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort." 243 Conn. at 89; Chieffalo v. Norden Systems, 49 Conn. App. 474 (1998) (evidence that employee fired in front of another employee and escorted out of building in front of twenty other employees insufficient to show unreasonableness); See also Muniz v. Kravis, supra, which was based upon allegations that the defendant had an armed security guard notify the plaintiffs, a married couple, that their employment was terminated and that they must vacate their employer owned apartment within twenty-four hours. The Connecticut Appellate Court noted that, at the time of the incident, one of the plaintiffs was at the apartment recovering from surgery and that the defendant had advised the plaintiffs only a month earlier that their jobs were not in jeopardy. 59 Conn. App. at 706-07. Nonetheless, applying the rationale of Parsons, the Court concluded that the "extreme and outrageous" standard had not been met. 59 Conn. App at 711.

b. **Lack of Proximate Cause**

Additionally, even if one assumed arguendo that Mr. Thomas had acted negligently in contacting the police, it cannot be disputed that the police officer's conduct, together with the Plaintiff's conduct at his home, was the proximate cause of any alleged injury suffered by the Plaintiff prior to being transported to Yale-New Haven, and that the conduct

15

Yale-New Haven's staff, together with the Plaintiff's own conduct at the Hospital, was the proximate cause of any alleged injury suffered by the Plaintiff at the Hospital. In other words, it was their conduct, not Mr. Thomas' conduct, that caused the Plaintiff's alleged emotional distress.[7] The issue of proximate cause is initially one that the Court may decide.

> ... "[p]roximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." (Internal quotation marks omitted.) Id., 178. An "issue of proximate cause is ordinarily a question of fact for the trier." (Internal quotation marks omitted.) Doe v. Manheimer, 212 Conn. 748, 756, 563 A.2d 699 (1989), overruled in part on other grounds, Stewart v. Federated Dept. Stores, Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995). "It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact." (Internal quotation marks omitted.) Id., 757.

Ludington v. Sayers, 64 Conn. App. 768, 773-74 (2001).

It is undisputed that no one from Beckman Coulter was present at the Plaintiff's residence at the time the Police interviewed the Plaintiff and decided to have the Plaintiff evaluated; no one from Beckman Coulter was consulted about or participated in any manner in the Police deliberations as to whether the Plaintiff should be evaluated; and no one from Beckman Coulter was consulted about or involved in the Yale-New Haven Hospital decision to admit the Plaintiff for an overnight evaluation, or to restrain him when he got unmanageable.

---

[7] It should be noted that Beckman Coulter is in no way suggesting that Officer Kendzierski, the Branford Police Department or Yale-New Haven Hospital acted negligently in any way in their dealings with the Plaintiff.

16

Under the unique, undisputed circumstances of this case, there can exist no plausible basis for concluding that Mr. Thomas' report to Officer Kendzierski was the proximate cause of the Officer's independent observation of the Plaintiff and independent determination that the Plaintiff should be transported to Yale-New Haven for evaluation, or the proximate cause of the Yale-New Haven staff's independent observation of the Plaintiff and independent determination that the Plaintiff should be involuntarily admitted to the Hospital for further observation, or the proximate cause of the Yale-New Haven staff's conclusion, based upon the Plaintiff's behavior at the Hospital, that he should be temporarily restrained.

**Conclusion**

For all of the forgoing reasons, Defendant Beckman Coulter is entitled to the entry of summary judgment as to Counts Two, Three and Four of the Revised Complaint.

DEFENDANT, BECKMAN COULTER, INC.

By: _____
Edward M. Richters (ct. 08043)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT  06105
(860) 522-0404
richtere@jacksonlewis.com

...

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first class mail, postage prepaid on the 8th day of October, 2004, to the Plaintiff's counsel of record:

> John R. Williams, Esq.
> Williams and Pattis, LLC
> 51 Elm Street, Suite 409
> New Haven, CT 06510
>
> Andrew M. Dewey, Esq.
> Baio & Associates
> 15 Elm Street
> Rocky Hill, CT 06067

_____
Edward M. Richters