UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL SALIBY | : |
| | : |
| VS. | :    NO. 3:03CV1535(DJS) |
| | : |
| PETER KENDZIERSKI and | : |
| BECKMAN COULTER, INC. | :    OCTOBER 26, 2004 |

**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF THE DEFENDANT BECKMAN COULTER, INC.**

**Introduction**

     Beckman Coulter, Inc., is a large corporation which employed the plaintiff for many years. Although the plaintiff believed he often was treated unfairly, he remained a hard-working employee until he was fired. Immediately upon terminating him, the corporation, acting through two high-ranking officials, reported him to the Branford Police Department. They asserted that he had said and done various things which made him dangerous. As a result, the defendant Kendzierski was dispatched to the plaintiff's residence. Although the plaintiff was entirely calm and rational, Kendzierski decided to rely upon the contrary claims of Beckman Coulter and took the plaintiff into custody for a forcible psychiatric examination pursuant to state law. As a result, the plaintiff was held prisoner overnight before the psychiatrists at Yale-New Haven Hospital realized that they had been duped and released him.

1

The plaintiff has sued Beckman Coulter for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.  These claims are in this court both because they are tied to a federal law claim against the arresting police officer and because of diversity of citizenship.

Defendant Beckman Coulter has moved for summary judgment.  As to the defamation count, it claims that its statements were conditionally privileged as good faith reports to the police.  As to both the intentional and the negligent infliction of emotional distress counts, the defendant asserts that its conduct was not "extreme and outrageous" and as to the intentional infliction count, the defendant further claims that its agents had no idea that turning the police on the plaintiff would upset him.  Finally, the defendant claims that its conduct did not proximately cause the plaintiff's confinement and consequent emotional distress.

**Legal Standard**

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing."  Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970).  "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury.  In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996).  Rather, the court must resolve any ambiguities and draw all inferences against the moving party.  Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991).  The evidence of the party against whom summary judgment is sought must be believed.  Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994).  The court

must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v.

Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

**The Facts**

Viewed from the plaintiff's perspective, giving him the benefit of all doubts and drawing all reasonable inferences in his favor, as the court must at this stage, the relevant facts are set forth in the plaintiff's Consolidated Local Rule 56 Statement, with supporting evidence either in the defendant's own exhibits or in his sworn deposition testimony which has been submitted as *Exhibit A* to that Statement.

The plaintiff was terminated by the defendant Beckman Coulter, Inc., at a meeting held at a Branford diner.  The plaintiff had not consumed any alcohol that day and consumed none at or after the meeting.  (Plaintiff's deposition transcript, pp. 163-65)  The plaintiff takes various medications and had taken a painkiller because of back spasms.  (Id., pp. 165-66)  Upon being terminated, the plaintiff was not angry but of

course he was upset and sad because he had worked for the company for many years and had been a good and a loyal employee. (Id., pp. 165-17)  The plaintiff told the defendant's representatives that he felt the termination was unfair.  He did not use any vulgarity, however.  (Id., p. 169)  At the conclusion of the meeting, the plaintiff shook hands with both of the defendant's representatives, engaged in small talk, and arranged to turn over the company vehicle and remove his belongings from that vehicle to his residence.  (Id., pp. 169-71)  There was absolutely no discussion between the plaintiff and either of the defendant's representatives about guns or violence.  (Id., pp. 171-74)  The plaintiff's meeting with the defendant's two representatives was professional and amicable.  (Id., pp. 173-74)

   The statements made about the plaintiff to Kendzierski by Beckman Coulter's representative were false.  (Id., pp. 220-24) Those false statements included the claim that "Mr. Saliby has been telling other employees that...it is a good thing he takes medication or he would kill people and said, it's a good thing I take medication because it keeps me from using my guns on people."  (Defendant Kendzierski's Exhibit 1) He claimed that, at the meeting with the plaintiff at which the firing had taken place, the plaintiff "appeared to have been drinking."  (Ibid.)  He falsely stated to Kendzierski that the plaintiff had told him "that if he was fired he would have nothing to live for." (Defendant Kendzierski's Exhibit 3, ¶ 9)

   Officer Kendzierski specifically swears in his affidavit that his decision to seize the person of the plaintiff and commit him to a psychiatric facility for examination was

6

based in part on the statements made to him by defendant Beckman Coulter's representative, Paul Thomas. (Id., ¶ 21)

**Defamation – Not Conditionally Privileged**

The defendant correctly asserts that when a report to police officers is the subject of a defamation action, the speaker enjoys a "qualified privilege" rather than an absolute privilege, so that a plaintiff must show that the false and defamatory statement was made with malice, which means specifically that it was made "with knowledge of its falsity or reckless disregard as to its truth." <u>Tarosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1, 29 (1995). The issue at this stage, then, is whether the evidence before the court, together with the reasonable inferences therefrom and all considered in the light most favorable to the plaintiff, is sufficient to permit a jury to find that the defendant's agent either knew his statements were false or made those statements with reckless disregard for their truth or falsity.

A jury could make such a finding in this case. Mr. Saliby has sworn that the following statements to Kendzierski were false:

    (1) that the plaintiff had said it is a good thing he takes medication or he would kill people;

    (2) that the plaintiff had said, it is a good thing he takes medication because it keeps him from using his guns on people;

    (3) that at the diner meeting the plaintiff appeared to have been drinking;

(4)  that the plaintiff had told him that if he was fired he would have nothing to live for.

Cumulatively, those statements were highly defamatory because they falsely portrayed the plaintiff as a homicidal maniac likely to bring guns into the workplace and open fire. If, as the plaintiff swears, he never made those statements, the accusation that he did clearly was made with knowledge of its falsity or reckless disregard of its truth. Thus, the question whether the defendant enjoys a qualified privilege hinges on factual determinations that only a jury can make.

### The Defendant's Conduct was Extreme and Outrageous

Assuming, then, as we must, that the defendant's agent knowingly falsely accused the plaintiff of being homicidal, mentally deranged and a danger to others, and made those accusations to a police officer, the issue is whether *that* sort of conduct could be found by a jury to have been "extreme and outrageous" within the meaning of the commonlaw tort of intentional infliction of emotional distress. That question already has been answered by Connecticut courts.

In Gilman v. Gilman, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption of their dinner. In Caesar v. Hatford Hospital, 46 F. Supp. 2d 174 (D. Conn. 1999), an employer had made false reports regarding the plaintiff to the Department of

8

Public Health.  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by the defendant's driver, made in the presence of the plaintiff's customers, suggesting that the plaintiff was a poor credit risk could be found "extreme and outrageous" so as to survive a motion for summary judgment.  A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury.  Musacchio v. Cooperative Educational Services, 1995 WL 681664, 1 Conn. Ops. 1319 (1995).  *Cf.*, Decampos v. Kennedy Center, Inc., 1990 WL 264687 at * 4 (1990).  An allegation that an employer framed an employee for theft, terminated her with that as an excuse, and then publicly branded her a thief was sufficiently extreme and outrageous to survive a motion to strike in White v. Thornton Oil Corp., 32 Conn. L. Rptr. No. 14, 505 (2002); and later, in a ruling by a different judge, to survive a motion for summary judgment in White v. Thornton Oil Corp., 36 Conn. L. Rptr. No. 8, 279 (2004).  The disputed allegation that the defendant physicians had falsely reported to police that the plaintiff had physically abused his wife, causing the plaintiff to be arrested, were potentially sufficiently extreme and outrageous to require denial of a motion for summary judgment in Pantaleo v. Ravski, 19 Conn. L. Rptr. No. 1, 28 (1997) (Silbert, J.).  The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle,

No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.).

Accordingly, if a jury believes the testimony of the plaintiff, it would be entitled to conclude that the conduct of the defendant's agent was "extreme and outrageous."

### The Conduct Alleged in Plaintiff's Testimony Easily Meets the Test for the Negligent Infliction of Emotional Distress

The defendant bases its argument respecting the claim of negligent infliction of emotional distress on a misunderstanding of the law.  Contrary to the defendant's claim, Connecticut does not require that the defendant's conduct have been "extreme and outrageous" for it to provide a basis for the negligent infliction of emotional distress. Copeland v. Home and Community Health Services, Inc., 285 F. Supp. 2d 144, 150-51 (D. Conn. 2003); Desardouin v. United Parcel Service, Inc., 285 F. Supp. 2d 153, 160 (D. Conn. 2003).

The elements of negligent infliction of emotional distress are only these: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).  The plaintiff's evidence, if credited, certainly establishes these elements.  Reporting another to the police as being a potentially homicidal lunatic is not

10

an action likely to be ignored by the police. No rational person could believe that making such a report was not likely to cause the subject of the report to be taken involuntarily into custody. And no rational person could believe that undergoing such an experience, if one were innocent, would not be likely to cause the most severe sort of emotional distress.

**Proximate Cause**

As noted above, and contrary to the defendant's argument, Officer Kendzierski already has sworn that the report of Beckman Coulter's agent caused him to take the plaintiff into custody. Proximate cause obviously is established by that testimony.

**Conclusion**

Defendant Beckman Coulter's motion for summary judgment should be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Andrew M. Dewey, Esq., at Baio & Associates, P.C., 15 Elm Street, Rocky Hill, CT 06067; and Edward M. Richters, Esq., at Jackson Lewis LLP, 55 Farmington Avenue, Suite 1200, Hartford, CT 06105.

_____
JOHN R. WILLIAMS